IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHELLE MCMAHON GRAY,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Case No. 2:14-cv-0948-JEO |
| ) | |
| CAROLYN W. COLVIN, Acting   ) | |
| Commissioner of Social Security,   ) | |
| ) | |
| Defendant.   ) | |

## MEMORANDUM OPINION

Plaintiff Michelle McMahon Gray brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. (Doc. 1).[1] This case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for the disposition of the matter. (Doc. 9). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for disability insurance benefits on July 13, 2011,

---

[1] References herein to "Doc. ___" are to the electronic numbers at the top of each pleading that are assigned by the Clerk of the Court.

alleging that she became disabled beginning July 15, 2010. (R. 28, 132-33).[2] Her application was initially denied. (R. 63-64). On November 29, 2012, following a hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability benefits, concluding that she is not disabled under the Social Security Act. (R. 37). The Appeals Council declined to grant review of the ALJ's decision. (R. 1-3). Plaintiff then filed this action for judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). (Doc. 1).

**II. STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, this court's role is a narrow one. "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The plaintiff must demonstrate that the decision of the Commissioner is not supported by substantial evidence. *See, e.g., Allen v. Schweiker,* 642 F.2d 799 (5th Cir. 1981). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v.*

---

[2]References herein to "R. ___" are to the administrative record located at Document 6 (Answer of the Commissioner). The page numbers are located at the lower-right hand corner of each page.

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted). The court gives deference to factual findings and reviews questions of law *de novo*. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1982))(internal quotations and other citations omitted); *see also Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005). As noted above, conclusions of law made by the Commissioner are reviewed *de novo*. *Cornelius,* 936 F.2d at 1145. Accordingly, "[n]o … presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Commissioner to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551

F. App'x at 524.

**IV. DISCUSSION**

    **A. Facts**

Plaintiff was 45 years old at the time of the ALJ's decision. (R. 37, 132). She did not finish high school, but did obtain a GED. (R. 45, 180). She has previous work experience as a daycare teacher in 2006 and 2007. (R. 47, 181 & 197).

Plaintiff alleged in her initial disability report that she was disabled and unable to work due to lupus, arthritis, and right knee issues. (R. 180). At her administrative hearing, she testified that she did not suffer from lupus, but she was diagnosed with fibromyalgia due to joint swelling. (R. 48). She also complained of migraine headaches and general chronic daily pain. (R. 49-50). She further testified that she has custody of her two grandchildren, ages four and six, and she cares for them with assistance from her husband and mother. (R. 48, 53-43).

Following Plaintiff's hearing, the ALJ found that she had the severe impairments of obesity, migraine headache disorder, polyarthritis multiple sites, mild osteoarthritis of the right knee with pain, status post fracture of the right thumb, and a history of sinusitis. (R. 31). Additionally, he found that she had the non-severe symptom of fatigue, which was not an impairment. (*Id.*) He further found that Plaintiff had "engaged in a form of substantial gainful activity" since her alleged onset

date. (R. 30). Specifically, he found that she "has performed the job of child sitter for her own [grand]children on a regular basis." (*Id.*) He also noted, "The job of child sitter is a very time-consuming and a very difficult job, even for a totally normal healthy caregiver, and one that requires substantial and significant physical and mental abilities and activities." (*Id.*) He further found that she performed the activity "on a virtual 24 hour a day, 7 day[s] a week basis," which is in excess of the typical "8 hours a day 5 days a week." (R. 31). Accordingly, he concluded, "She has performed and is performing a form of substantial gainful activity, to wit the job of a child sitter... This job ... constitutes a form of substantial gainful activity whether or not a 'profit' to her is considered to be realized." (*Id.*)

After reviewing the foregoing, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work. (R. 31-32). He also noted, "The record indicates that [Plaintiff] has performed the job of child sitter for her own [grand]children on a regular sustained basis." (R. 32). He also assessed the effect obesity had upon her "ability to perform routine movement and necessary physical activity within the work environment." (*Id.*) He concluded that it was not a disabling condition, but was due to be taken into consideration. (R.34). The ALJ also considered her various medical records. Included in those items were treatment records of Dr. Barry McCleney, who treated Plaintiff, *inter alia*, for sinusitis and right

knee pain in 2007, a fracture to her thumb in 2008, migraine headaches in 2010, and polyarthritis in 2009 and 2011. (R. 33, 236-53). Her right knee and chest x-rays were negative during this period, and she was diagnosed with polyarthritis of multiple sites and fatigue. (R. 33, 237, 240, 251-52). The ALJ also considered the 2011 consultative report of Dr. Hasmukh Jariwala, who examined Plaintiff's physical limitations. Dr. Jariwala found no swelling, no limitation of motion, and no deformity of the joints. (R. 33, 255-58). Her right knee x-ray revealed mild osteoarthritis. Dr. Jariwala opined that she suffered from minimal to mild impairment of her right knee. (R. 257). The ALJ also considered the evaluation of Dr. Brent Ponce concerning Plaintiff's right knee pain. Dr. Ponce found that while she had tenderness in the knee, but there was no evidence of instability and no malalignment. (R. 260). Finally, the ALJ reviewed Plaintiff's medical records and her hearing testimony concerning her migraine headaches. (R. 34). He concluded that her headaches were severe, but not a disabling impairment. He also found that despite her limitations, she was still able to care for her grandchildren on a full-time basis and she could perform a full range of light work. (R. 31-35).

Premised on the foregoing, the ALJ found that Plaintiff was able to perform her past relevant work as a daycare worker. (R. 36). The vocational expert (VE) testified that Plaintiff could perform as a daycare worker as the job was "actually and generally

performed." (*Id*.)  The VE also noted that "whether or not the result of a form of necessity, [Plaintiff] basically continues to perform this job in her home for her grandchildren." (*Id*.)  The ALJ also found, based on Plaintiff's age, education, work experience, and RFC, that she could perform other jobs available in the national economy, including inspector/hand packager, small products assembler, and housekeeper/cleaner. (R. 36-37).  He concluded that Plaintiff was not disabled during the relevant period. (R. 37).

### B. Plaintiff's Claims

Plaintiff advances two claims for relief.  First, she argues that the ALJ erred in finding that caring for her grandchildren in her home constitutes a form of substantial gainful activity. (Doc. 10 at 6).  Second, she argues that the ALJ's findings are not based on substantial evidence. (*Id*. at 9).  The Commissioner disagrees. (Doc. 12 at 6).  Each matter will be addressed below.

#### 1. Care for Her Grandchildren

Plaintiff initially asserts that the ALJ erroneously determined at step one of the sequential analysis that she was engaged in "substantial gainful activity" (SGA) due to the fact that she was caring for her grandchildren on a regular sustained basis.  She supports her contention by noting that the ALJ erroneously applied the SGA regulations. (Doc. 10 at 6-8 (citing 20 C.F.R. §§ 404.1571, *et seq*.)).  She also asserts

that she "was not performing 'work' in the competitive sense for pay" and "she was certainly not doing anything illegal...." (*Id*. at 6). She then notes that the ALJ incorrectly referenced 20 C.F.R. § 404.1572[3] in concluding that her caring for her grandchildren constituted SGA whether or not a profit is realized, because she was not working as an employee and she was not self employed. (*Id*. at 6-7). Lastly, Plaintiff states that to the extent it may be argued that the ALJ's error may have been harmless because the ALJ continued the sequential analysis, "it was not harmless from the standpoint of the tenor of the remaining findings." (*Id*. at 8). The Commissioner retorts that "the ALJ's step one determination is immaterial because the ALJ did not

---

[3]Section 404.1572 provides:

**What we mean by substantial gainful activity.**

Substantial gainful activity is work activity that is both substantial and gainful:

(a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572 (bold in original).

conclude his findings with the [SGA] analysis, but proceeded through the rest of the sequential evaluation process." (Doc. 12 at 7).

It is undisputed that the ALJ determined at step one that Plaintiff had engaged in SGA. It is also undisputed that the ALJ continued with the sequential evaluation steps. The issue is whether his continuation of the process corrected the arguably erroneous determination in step one. Plaintiff says it did not, while the Commissioner argues it did.

As noted above, the ALJ found at step two that Plaintiff had multiple severe impairments, including obesity, migraine headache disorder, polyarthritis at multiple sites, mild osteoarthritis of the right knee with pain, status post fracture of the right thumb, and a history of sinusitis. (R. 31). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments. (R. at 31). He then determined Plaintiff's RFC to perform a full range of light work premised on the entire record. (*Id.*) At step four, he determined that Plaintiff could perform her past relevant work as a day care worker. (R. 36). At step five, he determined that Plaintiff was also capable of performing other jobs existing in significant numbers in the national economy. (*Id.*)

The ALJ's decision in this case to deny benefits was premised on his finding

that Plaintiff had the RFC to perform "the full range of light work, considering [Plaintiff's] age, education, and work experience." (R. 37). That decision is not premised on an erroneous application of the SGA regulations in determining whether she could perform her past relevant work as a daycare worker at step four in the process. To the contrary, the ALJ noted that she had worked as a preschool worker from September 2006 until September 2007 (R. 33)[4] and that she "essentially continues to perform childcare" full-time with her grandchildren (R. 34). The ALJ also noted, "The vocational expert testified that [daycare worker] was the past relevant work for [Plaintiff]. Additionally, in comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, the undersigned [ALJ] finds that [Plaintiff ] is able to perform it as actually and generally performed." (R. 36). He further noted, "Additionally, whether or not the result of a form of necessity, [Plaintiff] basically continues to perform this job in her home for her grandchildren." (*Id*.) These findings support the determination that Plaintiff was not disabled and not entitled to any benefits. Accordingly, even if the ALJ erred in reaching the conclusion he reached at step one, the error is harmless. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error doctrine in a Social Security appeal after finding that an administrative law judge made "erroneous statements of fact");

---

[4]This finding is not disputed. (*See also* R. 47-48, 57-58, 162-67, 181 & 197-98).

*Ostborg v. Comm'r Soc. Sec.*, — F. App'x —, 2015 WL 3429099, *10 (11th Cir. May 29, 2015) ("The ALJ's discussion of other inconsistent statements..., even if erroneous, was harmless, since substantial evidence supports the ALJ's credibility finding"); *Hunter v. Comm'r Soc. Sec.*, — F. App'x —, 2015 WL 1843050, *3 (11th Cir. April 23, 2015) ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination."); *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 763 (11th Cir. 2014) ("Even assuming that the ALJ erred at step two, any error is harmless because the ALJ's conclusion that Himes had any 'severe' impairments advanced his claim to step three, where the ALJ had to consider all of Himes's impairments whether severe or not.").

### 2. Insufficiency of the Evidence

Plaintiff next argues that the ALJ's decision was not based on a complete record and that he failed to adequately consider her obesity. (Doc. 10 at 9). The court will examine these arguments in reverse order.

#### a. Obesity

Specifically, Plaintiff argues that, while the ALJ determined obesity to be a severe impairment," he "failed to adequately factor this condition into his [RFC] findings in combination with the other severe and non-severe impairments as required

under SSR 02-1p[5] and under the regulations and rulings including SSR 96-8p[6] requiring a function by function analysis..." (*Id*.)  The Commissioner argues otherwise.  (Doc. 12 at 9).

The Eleventh Circuit Court of Appeals has found that an ALJ properly

---

[5]The relevant portions state:

"An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment ... As explained in SSR 96–8p ... our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis....

....

The combined effects of obesity with other impairments may be greater than might be expected without obesity....

....

... When we identify obesity as a medically determinable impairment ..., we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments we identify."

67 Fed. Reg. 57859, 57862–63 (Sept. 12, 2002).  *See also Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (" '[T]he ALJ is required to consider obesity in the analysis of a claimant's overall medical condition.  *See* SSR 02–1p.  Social Security Regulation 02–1p provides that obesity shall be considered when determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment bars claimant 'from doing past relevant work and other work that exists in significant numbers in the national economy.'  SSR 02–1p.").

[6]SSR 96-8p is located at 1996 WL 374184.

considers a plaintiff's obesity when he (1) considered the diagnosis, (2) specifically referenced SSR 02-1p in his ruling, and (3) determined that the obesity was a severe impairment. *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260 (11th Cir. 2009). In this instance, the ALJ did that and more.

First, the ALJ recognized the obesity diagnosis in the medical evidence and found it was one of Plaintiff's severe impairments. (R. 31). Second, the ALJ in determining the RFC stated, "Assessment is made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." (R. 32). He specifically referenced SSR 02-1p, stating that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone...." (*Id.*) Third, the ALJ noted that while "[Plaintiff] weighs 250 pounds and is five feet four inches tall," her obesity is not a "disabling condition, but is taken into consideration in her [RFC]." (R. 34). The ALJ also noted the finding of Plaintiff's orthopaedic surgeon that the "single greatest improvement she could make [with regard to her right knee pain] would be to lose weight." (*Id.*) The ALJ concluded, stating that the RFC assessment of Plaintiff was "supported by the records of evidence."[7] (R. 35). In sum, the court finds that the ALJ more than adequately considered Plaintiff's obesity.

---

[7] In yet another part of the opinion, the ALJ also stated, "Obesity has been fully considered along with [Plaintiff's] combination of other impairments." (R. 32).

### b.     Completeness of the Record

In a brief, passing comment, Plaintiff asserts the ALJ's decision was not based on a complete record, lacking significant treating records from a rheumatologist (R. 268) that were submitted prior to the decision. (Doc. 10 at 9). The records Plaintiff is referencing are the notes of Dr. Henry D. Townsend. (*Id*. at 5). The Commissioner acknowledges that the ALJ did not specifically reference or discuss these records, but she argues that was not required in this case where the ALJ noted that he considered the entire record in making his determination. (Doc. 12 at 11).

Plaintiff was seen by Dr. Townsend for follow-up visits on August 23, 2011 and September 6, 2011. Her chief complaint was listed as "+ANA" (Antinuclear antibodies) and "Joint Pains." (R. 269, 271). She reported a history of "variable of arthralgias" (joint pain) over the last thirty years, difuse myofascial pain, intermittent right knee pain, moderate to severe intermittent left chest wall pain over the last two months, and "significant generalized fatigue and frequent trouble with sleeping." (R. 269 & 271). She weighed approximately 263 pounds and was about 5' 5" tall with a body mass index (BMI) of 44. It was also noted that "[s]he appears to have Fibromyalgia." (R. 273). Townsend's overall impression, however, was that "inflammatory CTD is unlikely but further w/u is warranted." (*Id*.) Lastly, the notes indicate that Plaintiff had normal range of motion, normal strength, no swelling, no

deformity, and a normal gait.  (R. 270-72).

While it does appear that the ALJ did not specifically address this evidence, there is no requirement that he discuss every record or note.  *Dyer*, 395 F.3d at 1211 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a  whole' ").[8]  This is particularly true

---

[8]In *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), the Eleventh Circuit concluded that

> the ALJ had failed to discharge his special duty because he did not clearly indicate the weight he accorded to the various testimony considered.  *Id.*  The court explained that the ALJ's decision did not allow proper judicial review.
>
>> The decision states only that the ALJ "has carefully considered all of the testimony ... and exhibits ... and has given weight to each as he feels should be properly accorded to it."  This statement tells us nothing whatsoever—it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it.  What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.

*Id.*

> In  *Cowart*, the court was faced with an ALJ's decision that conveyed "nothing whatsoever" as to what evidence the ALJ relied on in reaching his decision.  Cases decided after *Cowart* have recognized that if the ALJ's decision contains sufficient discussion of the evidence to allow meaningful judicial review,

where the ALJ specifically states that he considered all the record evidence. (*See* R. 35 ("All records of evidence have been considered in making a [RFC] assessment that [Plaintiff] is capable of performing")). Additionally, nothing about Dr. Townsend's notes or findings is significant. They do not support greater limitations than those accommodated in the RFC finding limiting Plaintiff to a full range of light work. (*See* R. 31). Plaintiff has not demonstrated how the records challenge the findings of the ALJ or how they warrant further consideration. In sum, the substantial evidence in the record supports the ALJ's decision.

## V. CONCLUSION

The Commissioner determined that Plaintiff was not disabled under the Social Security Act. For the reasons set forth above, the undersigned finds that the Commissioner's decision is due to be affirmed. There is no basis to support a remand of this case to the Commissioner.

---

the ALJ's decision need not refer to every piece of evidence. For example, in *Dyer v. Barnhart*, the court observed that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.' " 395 F.3d 1206, 1211 (11th Cir. 2005) (alterations in original) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

*Smith v. Colvin*, 2014 WL 4187668, *5 (N.D. Ala. August 15, 2014).

**DATED**, this the 17th day of June, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge